```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                FOR ONLINE PUBLICATION ONLY
```

---------------------------------------------------------------- X
MEDIATRIX CARPO,                              :
                                              :
                  Plaintiff,   :    MEMORANDUM
                                              :    AND ORDER
     - against -                         :
                                              :    05 CV 1169 (JG)
                                              :
WARTBURG LUTHERAN HOME FOR                    :
THE AGING,
                                              :
                  Defendant.   :
---------------------------------------------------------------- X

A P P E A R A N C E S :

    MEDIATRIX CARPO
        61 Hilliard Avenue
        Central Islip, New York  11722
        Plaintiff, *pro se*

    LEWIS JOHS AVALLONE AVILES & KAUFMAN, LLP
        425 Broad Hollow Road
        Melville, New York 11747
    By:    Daniel A. Bartoldus
        Attorneys for Defendant

JOHN GLEESON, United States District Judge:

        Mediatrix Carpo sued her former employer, Wartburg Lutheran Home for the Aging ("Wartburg"), claiming that Wartburg fired her in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. (2000). Carpo, acting *pro se*, seeks primarily money damages.[1] The parties have each moved for summary judgment. I heard oral argument

---

[1] Carpo also requests that I enjoin Wartburg from illegally firing employees after they are injured. *See* Compl. ¶ 19. Relief in that form is unlikely, but at this stage I do not rule on any issues of remedy.

on the motions on October 6, 2006. For the reasons discussed below, I grant Carpo's motion and deny Wartburg's motion.

A trial to determine damages will be held on January 8, 2007. Jury selection will commence before a magistrate judge at 9:30 a.m. Trial will commence at 2:15 p.m. A final pretrial conference will be held on January 5, 2007 at 10:00 a.m. In the meantime, I will appoint counsel for Carpo, subject to her approval.

BACKGROUND

Unless otherwise noted, the facts that follow are undisputed. In 2003, Carpo was employed by Wartburg as a nutritionist. On November 1, 2003, she was injured in a car accident unrelated to her job. The injury was serious enough to qualify Carpo for leave under the FMLA, and Wartburg granted that leave effective November 3, 2003.[2] *See* Aff. of Mary Ann Benton ¶ 5.

On November 28, 2003, Wartburg sent a letter to Carpo directing her to submit, upon her return, "a doctor's note indicating that you can resume full duties." *Id.* Ex. 1. On January 24, 2004, Carpo received another letter from Wartburg. This letter notified her that her FMLA leave would expire on February 3, 2004 and provided this warning: "[i]f you are unable to return to work on, or before, February 3, 2004, we will have no alternative but to replace your position with a permanent employee." The January letter also directed Carpo to submit a "doctor's certificate indicating that you can resume full duties." Aff. of Mediatrix Carpo ¶ 3(A)(i), Ex. 1. Wartburg contends, and Carpo does not dispute, that "it is Wartburg's policy to

---

[2] Both parties appear to agree that Carpo was notified that the FMLA would cover her leave retroactively to November 3, 2003 by letter dated November 28, 2003. *See* Aff. of Mary Ann Benton Ex. 1 ("You have been on a medical leave on absence since November 3, 2003. Please be advised that your leave will be covered under the Family Medical Leave Act effective this date.").

2

demand that an employee returning from a leave under the [FMLA] must supply a doctor's certification that she is capable of resuming the full duties of her position." Aff. of Daniel A. Bartoldus ¶ 6.

On February 3, 2004, after twelve weeks of leave, Carpo returned to work and presented a note from her doctor. Aff. of Mary Ann Benton ¶ 8. The note, handwritten on a prescription slip, read: "Pt may attempt return to work on 2/3/04." *Id.* Ex. 3. Mary Ann Benton, the Director of Human Resources, read the note and wrote on the back: "note unacceptable -- employee was written ltr that she must be able to resume full duties 2/3/04. Dr. states she may attempt to return to work -- Ms. Carpo stated that her dr said she could try & work. Policy is that employee resume full duties." *Id.* ¶ 9, Ex. 3. The parties disagree about exactly when Carpo was terminated, but for purposes of summary judgment I will assume that Wartburg is correct that she was fired on February 3 "upon plaintiff's failure to present a doctor's certification that she was capable of resuming the full duties of her position." Aff. of Daniel A. Bartoldus ¶ 4.

Carpo alleges that Wartburg had no intention of restoring her to her position, because it had already hired a replacement for her in December of 2003. Aff. of Mediatrix Carpo ¶ 3(A)(iv). Again, for purposes of summary judgment, I will assume this allegation is mistaken.

DISCUSSION

Carpo argues, among other things, that Wartburg interfered with her right to return to work after her FMLA leave by (1) refusing to accept the note from her doctor as a medical certification that she was fit for duty and (2) terminating her immediately after refusing the certification, rather than seeking clarification from her doctor. Wartburg responds that neither action interfered with Carpo's rights under the FMLA.

Summary judgment is appropriate only if a party's papers "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As is plain from the rule, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Here, the FMLA determines the material facts. *See id.* at 248 ("[T]he substantive law will identify which facts are material."). The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]." 29 U.S.C. § 2615(a)(1). Accordingly, an employer may not interfere with the right of an "eligible employee" to 12 work-weeks of leave during any 12-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Nor may the employer interfere with the right of the employee to be restored to her old job or an equivalent position. *See* 29 U.S.C. § 2614(a)(1). An employer may as a policy or practice, however, require "[a]s a condition of restoration" that the employee "receive certification from the health care provider of the employee that the employee is able to resume work . . . ." 29 U.S.C. § 2614(a)(4).

The parties do not disagree about the material factual context of Carpo's termination. It is undisputed that Carpo was an "eligible employee," that she qualified for FMLA leave on account of her injury, that her leave was designated FMLA leave, and that she returned to her job at the appropriate time. It is also undisputed that Wartburg had a policy of requiring a doctor's certification that employees returning from FMLA leave were able to resume "full duties." Rather, the parties disagree on the purely legal questions of whether the

4

handwritten note from Carpo's doctor was an adequate certification for FMLA purposes and, if it was not, whether Wartburg was therefore entitled to terminate Carpo immediately. There is thus no genuine issue of material fact and the questions are suitable for summary judgment.

A.   Carpo's "Fitness-for-Duty" Report Was Sufficient As a Matter of Law

The first question presented is whether Carpo's fitness-for-duty report constituted an adequate "certification" that she was "able to resume work."[3] Regulations promulgated by the Secretary of Labor provide that "[t]he certification itself need only be a simple statement of an employee's ability to return to work." 29 C.F.R. § 825.310(c). Wartburg argues that § 825.310(c) requires that the certification specify that the returning employee is "capable of resuming the full duties of her position." Aff. of Daniel A. Bartoldus ¶ 4. That argument fails, for two reasons. First, even were § 825.310(c) susceptible of such a narrow reading, Carpo's note would pass the test. By stating succinctly that Carpo "may attempt return to work," the note necessarily conveyed the doctor's belief that, as a medical matter, Carpo was able to resume her work as a nutritionist. The qualifying language "may attempt" does not intimate that Carpo is incapable of resuming the full duties of her position. Rather, it conveys that the doctor is not absolutely certain, but, because it is very likely that she can, it is safe for her to try. If the doctor thought Carpo medically incapable of resuming her regular work, a statement that she could attempt to do so would be anomalous indeed. Accordingly, even under defendant's cramped

---

[3]   Disputes about the suitability of fitness-for-duty reports are different from disputes about whether employees are in fact unable to return to work. *Compare Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 161 (2d Cir. 1999) (holding that employer did not interfere with employee's FMLA rights because at the end of the leave period employee "remained unable to perform the essential functions" of his job). The latter are about the capability of the employee. The former (this case) are about what the fitness-for-duty report says about the capability of the employee.

5

construction of the regulation, the note is a simple and sufficient statement of Carpo's ability to return to work.

Second, Wartburg's narrow interpretation of the regulation is simply wrong. Section 2614(a)(4) requires "certification . . . that the employee is able to resume work . . . ." Under § 825.310(c), "a simple statement of an employee's ability to return to work" is all that is required. To the extent Wartburg reads this language to require a definitive statement that an employee is able to return to her "full duties," it finds no support in the language, structure, or policies of the statute and regulations. Asking that I reject Carpo's note, Wartburg urges an interpretation of the regulation that would disqualify all but the most definitive and explicit language establishing an employee's ability to return to her full duties. But that is not what the regulation says. It says the employer may require the employee to provide a "simple statement" (not a "definitive statement" or an "unqualified statement") of her "ability to return to work" (not her ability to resume "full duties"). Moreover, as discussed in the next section, the regulation contemplates the presence of qualified, precatory, or broad language in a valid note, because it specifies a procedure for "clarification" of such notes and prohibits the employer from "delay[ing] the employee's return to work" while such clarification is sought. 29 C.F.R. § 825.310(c). A simple statement that the employee can return to work, possibly including qualified language and possibly excluding specification of the level of work an employee is capable of, is all that the regulation requires. Accordingly, the presence of words like "attempt"

6

and the absence of phrases like "full duties" in Carpo's note is not fatal for § 2614(a)(4) purposes.[4]

The policies behind the FMLA support this conclusion. "To the extent pertinent to the present action, the FMLA was enacted because of Congress's view that 'there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods . . . .'" *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999). If accepted, Wartburg's interpretation of 29 C.F.R. § 825.310(c) would subvert this purpose. Employers would be permitted to reject a doctor's certification simply because the doctor had written, "It is my belief that employee can return to work," or, "Employee likely can return to work safely, but should be careful and attentive." In implementing the FMLA, the Secretary of Labor did not intend to make an employee's job security subject to the caprice of the language in a doctor's note, or to empower employers to play "gotcha" when notes fail to include talismanic phrases. To the contrary, it has advanced the Congressional goal of providing job security for those employees who suffer from serious but temporary health conditions by requiring only a "simple statement of [the] employee's ability to return to work" -- and nothing more -- from the doctor.

Wartburg finds no support for its position in the caselaw. Courts have upheld fitness-for-duty reports placing explicit restrictions on returning employees' duties. For example, in *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1004 (6th Cir. 2005), the Sixth Circuit reversed the district court's conclusion that a doctor's note provided inadequate

---

[4] As the Sixth Circuit and other courts have pointed out, further support for the rule that fitness-for-duty reports need only state that the employee can return to work can be found by comparing the "simple statement" requirement of 29 C.F.R. § 825.310(c) with the detailed initial medical certification requirements of 29 U.S.C. § 2613(b). *See Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1004 (6th Cir. 2005) (citing further cases).

certification for § 2614(a)(4) purposes. Unlike Carpo's note, the note in question stated that the employee "should only work a 40-45 hour work week and limit her out of town travel to 1 day per week." *Id.* at 1003. This, for an employee who had formerly "travell[ed] almost every day and . . . worked over sixty hours a week," *id.* at 998, was hardly a return to "full duties." *See also Albert v. Runyon*, 6 F.Supp.2d 57, 62 (D. Mass. 1998) (holding that employer could not reject fitness-for-duty report as "inadequate to allow it to assess whether [employee] would be capable of performing all her duties," because the report "need not contain . . . specific information about the employee's condition").[5] Wartburg's proposed interpretation of § 825.310(c) would require me to disapprove of this caselaw, which I see no reason to do.

B.  Even if the Report Were Deficient, the FMLA Required Wartburg to Seek Clarification Before Firing Carpo

As discussed above, Carpo's fitness-for-duty report was a valid "certification" for FMLA purposes. Even were it not, however, Carpo is correct that Wartburg violated her FMLA rights by rejecting her report and terminating her immediately, rather than seeking clarification from Carpo's doctor. 29 C.F.R. § 825.310(c) provides that:

> An employer may seek fitness-for-duty certification only with regard to the particular health condition that caused the employee's need for FMLA leave. The certification itself need only be a simple statement of an employee's ability to return to work. A health care provider employed by the employer may contact the employee's health care provider with the employee's permission, for purposes

---

[5] It is true that some doctors' communications to employers have been found to be too vague or incomplete to constitute adequate fitness-for-duty reports. *See, e.g.*, *Bloom v. Metro Heart Group, Inc.*, 440 F.3d 1025, 1029 (8th Cir. 2006) (holding that report by employer's physician stating that "[i]f [employee] were working, I would not be able to determine any medical basis to restrict work activities as a sonographer/electrocardiographer/ultrasound technician" was too vague a statement for certification); *Rogers v. New York University*, 250 F.Supp.2d 310, 314 (S.D.N.Y. 2002) (rejecting as certification "ambiguous phone messages [that] failed to state a date when [employee] could return to work, and failed clearly even to state that [employee] was medically fit to return"). Carpo's report had neither defect, as it conveyed both that she could return to work and that she could do so on February 3, 2004.

> of clarification of the employee's fitness to return to work. No additional information may be required, and clarification may be requested only for the serious health condition for which FMLA leave was taken. The employee may not delay the employee's return to work while contact with the health care provider is being made.

Wartburg suggests that the "may" in the third sentence of the quoted passage above *entitles* the employer to seek clarification of a facially inadequate fitness-for-duty report, but does not *require* that it do so. *See* Aff. of Daniel A. Bartoldus ¶ 8. Wartburg argues that § 825.310(c) permits an employer to simply terminate an employee with an ambiguous fitness-for-duty report on the spot.

I disagree. The job security of employees returning to work with good-faith but arguably insufficient certifications should not depend on the beneficence of the employer. Without explicit guidance from the statute or regulations, I will not adopt an interpretation so contrary to Congress's stated purpose of protecting the jobs of employees with temporary health problems. The FMLA and its implementing regulations nowhere permit an employer to refuse restoration to an employee upon submission of a timely but inadequate fitness-for-duty report. This omission has significance. 29 C.F.R. § 825.311(c), which governs employees who fail to provide any certification at all when they return to work, demonstrates that if Congress had intended to permit the termination of employees who return to work with insufficient certification, it would have said so. That regulation provides that "unless the employee provides either a fitness-for-duty certification or a new medical certification for a serious health condition at the time FMLA leave is concluded, *the employee may be terminated*." 29 C.F.R. § 825.311(c) (emphasis added). By contrast, § 825.310(c) lacks any language permitting termination when the returning employee provides an insufficient certification.

9

Of course, the FMLA nowhere explicitly prohibits termination of employees with timely but inadequate certifications. And I have little doubt that a fitness-for-duty report can be so facially inadequate that no amount of "clarification" from its author would be sufficient to entitle the employee to return to work. But when, as here, an employer claims to find ambiguity in a return-to-work certificate that the issuing doctor can usefully clarify, the default rule, in keeping with the Congressional purpose, is that the employee must be allowed to remain on the payroll while clarification is sought. *Cf.* 29 C.F.R. § 825.310(c) (*"*The employer may not delay the employee's return to work while contact with the health care provider is being made.").

I acknowledge that my view of the statute and regulations posits a critical divide -- between fitness-for-duty reports that are so facially deficient that immediate termination is permissible and, on the other hand, reports that contain ambiguities or defects as to which the employer must seek clarification before termination can occur. There might be hard cases on either side of that divide, but that is no reason not to get the easy ones right. Wartburg had no right to immediately fire Carpo when her doctor wrote that she was fit to attempt to return to her duties. Even if the note were not sufficient as a matter of law, as I have held above, at the very least Wartburg was required to seek clarification before it fired Carpo. *See Brumbalough*, 427 F.3d at 1004 ("If Camelot decided that the same note [*i.e.*, the doctor's note] was insufficient as a fitness-for-duty certification, it should have sought clarification from Brumbalough's doctor."). I will not strain to read the statute and the regulations to provide otherwise.

## CONCLUSION

For the foregoing reasons, I grant summary judgment in favor of the plaintiff, and deny the defendant's cross-motion. This case will proceed to trial on damages. *See* 29 U.S.C. § 2617(a)(1)(A)(i), (ii). As I mentioned at oral argument, the trial will also resolve the questions

of whether Wartburg hired a permanent employee for Carpo's position during her FMLA leave, and whether Wartburg terminated Carpo before her leave was over. Those issues will bear directly on whether Wartburg acted in good faith, and thus will aid in the exercise of my discretion with regard to liquidated damages. *See* 29 U.S.C. § 2617(a)(1)(A)(iii).

So ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
October 16, 2006